UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DENISE PIRRITANO,

No. 2:08-cv-01488-MCE-KJM

        Plaintiff,

    v.

<u>MEMORANDUM AND ORDER</u>

CITY OF REDDING, COUNTY OF
SHASTA, REDDING POLICE
DEPARTMENT, SHASTA COUNTY
SHERIFF'S OFFICE, LEONARD F.
MOTY, TOM BOSENKO, ERIC
WALLACE, CHRIS SMYRNOS, EDWARD
GILMETTE,

        Defendants.

----oo0oo----

    This action arises out of the arrest and overnight detainment of Plaintiff Denise Pirritano ("Plaintiff") on charges of public intoxication.  Presently before the Court is a Motion by all named Defendants pursuant to Federal Rule of Civil Procedure 56 for Summary Adjudication of Plaintiff's claims of violation of the Elder and Dependant Adult Civil Protection Act, Negligent Hiring and Training, and violations of Section 1983.

///

1

Defendant Officer Eric Wallace moves for Summary Judgment as to all claims alleged against him.  For the reasons set forth below Defendants' Motion is granted in part and denied in part.[1]

**BACKGROUND**

Plaintiff is a disabled adult who suffers from physical and/or mental disabilities resulting from a five-story fall several years ago.  As a consequence of this fall, Plaintiff states that she suffers from uncoordinated gait and motor control and dysarthric speech caused by permanent injury to facial and throat nerves and vocal cords.

On March 26, 2007, Plaintiff was at the Cascade Theater when theater employees, believing she was intoxicated, required her to leave the theater and then called the police.  Officers Wallace, Gilmette and Smyrnos arrived, responding to a call that an intoxicated woman had left the Cascade Theater, was wandering through traffic, and had urinated in public.  Officers state that upon contact with Plaintiff she appeared to be staggering, had a strong odor of alcohol on her breath, her eyes were bloodshot, and she was unable to stand without assistance.  Based upon these observations, Officer Gilmette arrested Plaintiff for public intoxication.

///

///

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. Local Rule 230(g).

1  Plaintiff alleges that the officers chased and violently
2  seized her in effecting arrest.  She further alleges that she was
3  slammed against the ground and hit with batons resulting in
4  injuries to her prosthetic knee, her already disabled neck and
5  back, and other damage aggravating her disability.  Plaintiff
6  alleges that one or more of the Defendants were aware of her
7  disability but acted in conscious disregard of it.

8  The officers contend that Plaintiff was never struck or
9  injured.  They allege that Plaintiff was handcuffed without
10  difficulty and assisted into the police vehicle.  When Plaintiff
11  began to spit, officers placed a spithood on her to prevent
12  Plaintiff from spitting on the vehicle or its occupants.

13  Plaintiff alleges that Defendants failed to or negligently
14  conducted an investigation into her true situation and, as a
15  result, wrongfully arrested and imprisoned her.  This allegedly
16  resulted in Plaintiff being held in Shasta County Jail for
17  approximately eight hours, during which time Plaintiff alleges
18  she was not given proper medical treatment and was denied her
19  essential prescription medications.  Plaintiff also alleges she
20  was subjected to verbal and physical abuse, insults and derisive
21  language, mocking demonstrations of her disabilities, and
22  unnecessary restraints.

23  Officers, however, contend that Plaintiff was asked whether
24  she required medical attention but Plaintiff refused to answer
25  any medical questions.  They allege that she did not appear to
26  have any injuries at the time nor did she claim to have any.
27  Officers state that following intake they put Plaintiff in a
28  "sobering cell" where she was observed every 15 minutes.

3

1 Nothing unusual was observed while she was there, and Plaintiff
2 was thereafter released at 6:00 a.m. the next morning.

3

4                              **STANDARD**

5

6      The Federal Rules of Civil Procedure provide for summary
7 judgment when "the pleadings, the discovery and disclosure
8 materials on file, and any affidavits show that there is no
9 genuine issue as to any material fact and that the movant is
10 entitled to a judgment as a matter of law." Fed. R. Civ. P.
11 56(c). One of the principal purposes of Rule 56 is to dispose of
12 factually unsupported claims or defenses. <u>Celotex Corp. v.</u>
13 <u>Catrett</u>, 477 U.S. 317, 323-324 (1986).

14      Rule 56 also allows a court to grant summary adjudication on
15 part of a claim or defense. <u>See</u> Fed. R. Civ. P. 56(a) ("A party
16 claiming relief may move...for summary judgment on all or part of
17 the claim."); <u>see also</u> <u>Allstate Ins. Co. v. Madan</u>, 889 F. Supp.
18 374, 378-79 (C.D. Cal. 1995); <u>France Stone Co., Inc. v. Charter</u>
19 <u>Township of Monroe</u>, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

20      The standard that applies to a motion for summary
21 adjudication is the same as that which applies to a motion for
22 summary judgment. <u>See</u> Fed. R. Civ. P. 56(a), 56(c); <u>Mora v.</u>
23 <u>ChemTronics</u>, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

24          A party seeking summary judgment always bears the
           initial responsibility of informing the district
25         court of the basis for its motion, and identifying
           those portions of "the pleadings, depositions,
26         answers to interrogatories, and admissions on file
           together with the affidavits, if any," which it
27         believes demonstrate the absence of a genuine
           issue of material fact.
28

Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Rule 56(c)). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

        In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251 (quoting Schuylkill and Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)).

///

///

As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts....Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. <u>Anderson</u>, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

**A.   Abuse of Disabled Adult**

Plaintiff alleges violation of the Elder and Dependant Adult Civil Protection Act ("EDACPA"), codified at Welfare and Institutions Code § 15600 et seq.  "'Abuse of an elder or a dependent adult' means ... [p]hysical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering."  Cal. Welf. & Inst. Code § 15610.07.

///

6

1    Plaintiff states that she is disabled and dependant as
2  defined by the code and that Defendants knew or should have known
3  of Plaintiff's condition such that Defendants are liable under
4  the Act.  Defendants argue that as a matter of law they can not
5  be held liable under the EDACPA because it only applies to
6  nursing homes and similar facilities.  Additionally Defendants
7  state Plaintiff is not a "dependant" under the Act.

8    Whether California's Elder Abuse Act applies to arrests and
9  imprisonment appears to be one of first impression. Traditionally,
10 the EDACPA is most often invoked to protect elder and dependent
11 adults who are residents of nursing homes and other health care
12 facilities.  <u>Country Villa Claremont Healthcare Center, Inc. v.</u>
13 <u>Superior Court</u>, 120 Cal. App. 4th 426, 432-33 (App. 2 Dist. 2004).
14 Truly, the EDACPA repeatedly refers to the duties of "long-term
15 health care facilities" and "health care providers."  Cal. Welf. &
16 Inst. Code §§ 15655, 15657.2.  However, nothing in the statute
17 itself specifically limits the applicability of the Act to only
18 nursing homes and health care facilities.

19   In enacting the EDACPA, the Legislature codified their
20 findings at § 15600 stating, *inter alia*, that:

21        The Legislature recognizes that most elders and
          dependant adults who are at the greatest risk of
22        abuse, neglect, or abandonment by their families ***or***
          ***caretakers*** suffer physical impairments and other
23        poor health that place them in a dependant and
          vulnerable position...
24        It is the intent of the Legislature in enacting
          this chapter to provide that [agencies and law
25        enforcement] shall receive referrals or complaints
          from public or private agencies...or from any other
26        source having reasonable cause to know that the
          ***welfare of an elder or dependant adult is***
27        ***endangered***, and shall take any actions considered
          necessary to protect the elder or dependant adult...
28

                                   7

1   Cal. Welf. & Inst. Code § 15600 (emphasis added).  Such findings

2   evidence Congressional concern with preventing caretakers from

3   endangering their charges.  Furthermore, negligent acts within

4   the EDACPA have been defined by courts as the failure of those

5   responsible for attending to the basic needs of the elderly and

6   dependant adults to carry out their *custodial* obligation.  <u>Benun</u>

7   <u>v. Superior Court of Los Angeles County</u>, 123 Cal. App. 4th 113,

8   123 (2005) (emphasis added).

9        Here, Plaintiff argues that by placing her under arrest and

10  taking her into custody Defendants became her caretakers and took

11  on a custodial obligation to provide for her welfare.  By

12  committing the alleged wrongful acts, and therefore endangering

13  her, she argues Defendants are liable under the EDACPA.

14       However, the Court cannot extend the reach of the EDACPA to

15  include circumstance presented by Plaintiff.  There is no

16  authority to warrant such a broad interpretation.  Although the

17  statutory language may not limit the Act's coverage, the

18  Legislative findings and relevant case law nonetheless indicate

19  that the EDACPA was intended for deliberate consistent

20  caretakers, not for limited encounters with law enforcement.  It

21  is unlikely that the Legislature sought to create a second cause

22  of action for every case in which a disabled adult alleged wrongs

23  at the hands of law enforcement.

24       Accordingly, Defendants' motion for summary adjudication is

25  granted as to Plaintiff's EDACPA claim. Regardless of whether

26  Plaintiff may be considered a "dependant adult," the facts and

27  circumstances present do not invoke the application of this Act.

28  ///

8

**B.   Individual Violation of § 1983- Chief Moty and Sheriff Bosenko**

Plaintiff alleges that Leonard Moty and Tom Bosenko are liable under Section 1983 due to their supervisory roles as Chief of Redding Police Department and Sheriff of Shasta County respectively.  A supervisor may be held liable for constitutional violations by his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).  There is no *respondant superior* liability under Section 1983.  <u>Id</u>.  However supervisors will nonetheless be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3)conduct that showed reckless or callous indifference to others.  <u>Cunningham v. Gates</u>, 229 F.3d 1271, 1292 (9th Cir. 2000)

Defendants argue that Moty and Bosenko were not present and therefore did not direct or participate in any constitutional injury.  They further argue that Plaintiff has not established, and has no evidence supporting, the allegation that they were involved in any constitutional violation.

In an attempt to provide evidence supporting her claim, Plaintiff points to a video tape from the jail allegedly containing audio of Plaintiff screaming in her cell followed by a male voice laughing.

///

///

Plaintiff also alleges that while in custody she was wrongfully forced to wear a spit mask and left handcuffed to a cold bench for over an hour before being "propelled" into her cell. Plaintiff argues that the routine and cool manner in which the jail employees behaved during Plaintiff's custody evidences a "custom" of mistreatment authorized by Supervisors Moty and Bosenko.

However, even accepting these allegations of fact as true, there still does not exist any evidence on the record of Moty or Bosenko being made aware of any constitutional violations or failing to act to prevent them.  Nothing suggests that the Supervisors were failing to address routine wrongful conduct.

Once a moving party has carried out its burden of pointing out the absence of evidence to support the nonmoving party's case, it then becomes the burden of the non-moving party to go beyond the pleadings and identify facts which show a genuine issue for trial. <u>Fairbank v. Wunderman Cato Johnson</u>, 212 F.3d 528, 532; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). Here, the only evidence Plaintiff points to is a jail video showing employees routinely conducting business.  This hardly amounts to sufficient evidence of "deliberate indifference to the treatment of prisoners" on the part of the Supervisors.

Accordingly Defendants' motion for summary adjudication of Plaintiff's Section 1983 claim as alleged against Chief Moty and Sheriff Bosenko is granted.

///

///

///

1          C.    **Public Entity Violation of § 1983**

2

3          Plaintiff alleges municipal liability under Section 1983 on

4    the part of the City of Redding and County of Shasta.   A

5    plaintiff may hold a municipality liable under section 1983 for

6    its official acts pursuant to policy regulation, custom or usage.

7    Chew v. Gates, 27 F.3d 1432, 1444 (9th Cir. 1994).   City policy

8    "need only cause [the] constitutional violation; it need not be

9    unconstitutional per se."   Jackson v. Gates, 975 F.2d 648, 654

10   (9th Cir.1992).   City policy "causes" an injury where it is "the

11   moving force" behind the constitutional violation, Monell v.

12   Dept. of Soc. Serv. of City of N.Y., 98 S. Ct. 2018, 2037-38

13   (1978), or where "the city itself is the wrongdoer" Collins v.

14   City of Harker Heights, Tex., 112 S. Ct. 1061, 1067 (1992).

15   Alternatively, a municipality may be held liable for failure to

16   act.   Long v. City of Los Angeles, 442 F.3d 1178, 1185 (9th Cir.

17   2006).   To impose Section 1983 liability against a municipality

18   for its failure to act, a plaintiff must show: (1) that a county

19   employee violated the plaintiff's constitutional rights; (2) that

20   the county has customs or policies that amount to deliberate

21   indifference; and (3) that these customs or policies were the

22   moving force behind the employee's violation of constitutional

23   rights.   Long, 442 F.3d at 1186.

24   ///

25   ///

26   ///

27   ///

28   ///

1    Plaintiff alleges deliberate indifference on the part of the
2  City and County, and points to the absence of records or
3  personnel action regarding Plaintiff's mistreatment as evidence
4  of such indifference.  As such, Plaintiff essentially claims that
5  the city itself is the wrongdoer in being indifferent to the
6  violation of her constitutional rights.

7    Whether Plaintiff's treatment amounted to a constitutional
8  violation is a triable issue of fact, as is the City and County's
9  role in instituting customs that allowed such violations to
10  occur.  A reasonable jury could find that the City and County
11  failed to act to protect Plaintiff's rights and that this
12  indifference was the "moving force" behind her harm.
13  The determination of whether the absence of records evidences a
14  claim of municipality liability under Sections 1983 is a
15  determination best left to the jury.  Accordingly, summary
16  adjudication of the Section 1983 claims alleged against the City
17  and the County is denied.

18

19    **D.    Negligent Hiring, Training, Promotion, and Discipline**

20

21     "In California, an employer can be held liable for
22  negligent hiring if he knows the employee is unfit, or has reason
23  to believe the employee is unfit or fails to use reasonable care
24  to discover the employee's unfitness before hiring him." <u>Juarez</u>
25  <u>v. Boy Scouts of Am., Inc.</u>, 81 Cal. App. 4th 377, 395 (<u>quoting</u>
26  <u>Evan F. v. Hughson United Methodist Church</u>, 8 Cal. App. 4th 828,
27  843, (3d Dist.1992)).
28  ///

Plaintiff alleges that evidence of negligent hiring and training exists "on the face of the Probable Cause Report" and the "inconsistent log narrative reports."

There are in fact inconsistencies between the log reports and Plaintiff's version of events, with Plaintiff's descriptions of violence and struggle being conspicuously absent from the police records.  The Court will not make a ruling on the "correct" description of Plaintiff's arrest as that is triable issue of fact.  A reasonable jury could find that the inconsistencies present are the result of negligent hiring and training of the officers.

Accordingly, Defendants' Motion for Summary Adjudication of Plaintiff's negligent hiring and training claim is denied.


**E.   All Claims Alleged Against Officer Wallace**


Defendant Eric Wallace was the corporal officer on duty at the time of Plaintiff's arrest.  His name appears on the Probable Cause Report as an administrative requirement attendant to his role as supervisor of the arresting officers that evening. Defendants state that Wallace only reviewed the Probable Cause Report ("PCR") after it had been completed and that at no time did he interact with Plaintiff or play any other role in her arrest.  As such, Defendants argue all claims against him should be dismissed.

///

///

///

13

1    Plaintiff argues that Wallace, as the person who reviewed
2  the PCR, was negligent in overseeing the conduct of his
3  suboordinating officers.  Plaintiff states that the
4  inconsistencies between the PCR, the Log Report, and the radio
5  broadcasts Wallace should have been listening to exist as
6  evidence of his negligence and deliberate nonfeasance, thus
7  making him liable.  Plaintiff argues that such inconsistencies
8  should have put Wallace on inquiry notice that misconduct may
9  have occurred.

10   These determinations exist as triable issues of fact.  A
11 reasonable jury could find that Wallace, as the corporal officer
12 on duty, was aware or should have been aware of any instance of
13 excessive force that might have been inflicted upon Plaintiff and
14 that by failing to act he is also culpable.

15   Resultantly, Defendants' Motion for summary adjudication of
16 all claims alleged against Wallace is denied.

17
18                        **CONCLUSION**
19

20   For the foregoing reasons, Defendants' Motion for Summary
21 Adjudication (Docket No. 24) is GRANTED in part and DENIED in
22 part.  Summary adjudication is GRANTED as to Plaintiff's claims
23 for violation of the EDACPA and violation of Section 1983 as
24 alleged against Chief Moty and Sheriff Bosenko.
25 ///
26 ///
27 ///
28 ///

1   Summary adjudication is DENIED as to Plaintiff's claims for
2   violation of Section 1983 as alleged against City of Redding and
3   County of Shasta, Plaintiff's claim for Negligent Hiring and
4   Training, and all claims alleged against Officer Wallace.
5        IT IS SO ORDERED.
6
    Dated: February 26, 2010
7
8                                        _____
9                                        MORRISON C. ENGLAND, JR.
                                         UNITED STATES DISTRICT JUDGE
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

15